## Case No. 9,518.

### In re MEYERS.

[2 Ben. 424; [1] 1 N. B. R. 581 (Quarto, 162).]

District Court, S. D. New York. May, 1868.

BANKRUPTCY — STAYING PROCEEDINGS — FRAUDU-
LENT CONVEYANCE—RESULTING TRUST.

1. Where after a bankrupt had filed his pe-
tition and been adjudged a bankrupt, creditors
who held judgments against him. and had proved
their debts in the bankruptcy proceedings, com-
menced a suit in a state court against him and
others, charging that certain real estate which
stood in the name of the bankrupt's wife, had
been bought by him and paid for with his mon-
ey in fraud of his creditors, and that a trust
had resulted in their favor from such purchas-
es, and praying that their judgments might be
satisfied out of such property: _Held._ that, by
proving their debts in the bankruptcy proceed-
ings, the creditors waived all right of action
against the bankrupts, on either the judgments
or the original indebtedness; and that proceed-
ings in such suit must be stayed, under the 21st
section of the bankruptcy act [of 1867 (14 Stat.
526)].

[Distinguished in Hill v. Phillips, 14 R. I. 95.]

2. If the allegations of the creditors were
true, the money used by the bankrupt in the
purchase of the real estate was "property con-
veyed by the bankrupt in fraud of his credit-
ors," under the 14th section of the act, and
passed to the assignee in bankruptcy under that
section.

[Cited in Re Rainsford, Case No. 11,537.]

On the 8th of June, 1865, Martin Maas re-
covered a judgment, in the supreme court of
New York, against the bankrupt, Louis Mey-
ers. and one Sondheim, as joint debtors, for
$1,130.70. It was duly docketed and execu-
tion was issued on it and returned unsatisfied.
It was now wholly due, with interest from
January 8th, 1866. It was founded on two
promissory notes of the debtors, one made
July 18th, 1860, at eight months, for $679.01,
and one made August 25th, 1860. at eight
months, for $322.48, and an account for $9.62,
for goods sold. The consideration for the
notes and account was goods sold to the debt-
ors by Maas. in July, August. and September,
1860. On the 9th of April, 1866. Bache, Ul-
man & Bach recovered a judgment in the
supreme court of New York, against the bank-
rupt and Sondheim, as joint debtors, for $1,-
167.08. It was duly docketed and execution
was issued on it and returned unsatisfied,
and it was now wholly due, with interest from
its recovery. It was founded on a promissory
note of the debtors, made August 10th, 1860,
at eight months, for $781.56. The considera-
tion for the note was goods sold to the debt-
ors by Bache, Ulman & Bach, in July. August
and September, 1860. On the 27th of March,
1868, Maas and Bache. Ulman & Bach com-
menced an action, in the supreme court of
New York, against the bankrupt and his wife,
the complaint in which, after setting forth
the foregoing facts, averred that, while the
bankrupt was so indebted to them, and while
he was insolvent, and on or about the 14th

---

[1] [Reported by Robert D. Benedict, Esq., and
here reprinted by permission.]

of April, 1864, he purchased, with his own
money and his own means, certain land in
the city of New York, with the dwelling
house thereon, particularly described in the
complaint; that, on such purchase, the said
house and lot of land were conveyed, by the
direction of the bankrupt and at his request,
to his wife, by the vendors, by a deed of con-
veyance recorded July 5th, 1864; that the
bankrupt paid the whole or the greater part
of the consideration or purchase money of the
conveyance, and more than sufficient thereof
to pay the amount of the said two judgments
and interest; that the consideration or pur-
chase money was $7,400; that the house and
lot were now worth over $20,000; that the
conveyance was voluntary and without con-
sideration, as between the bankrupt and his
wife, and was founded upon no other consid-
eration, as between grantor and grantee, than
the purchase money, so paid by the bankrupt,
and was fraudulent, as against the plaintiffs
in the suit, as his creditors; that, on such
conveyance. the legal title, in fee simple,, to
the house and lot, vested in the wife of the
bankrupt and was still in her. and a trust
resulted in favor of said plaintiffs, as cred-
itors of her husband, to an extent sufficient
to satisfy their demands, being the amount
of the said two judgments and interest; and
that Sondheim was insolvent and had been
so since prior to the purchase of the house
and lot. The prayer of the complaint was for
judgment that the trust might be established
and declared, that the plaintiffs might be en-
titled in equity to enforce the trust, that the
wife of the bankrupt might be declared to
be the trustee thereof, and that, unless she
should pay to the plaintiffs the amount upon
their judgments, with interest, the house and
lot might be sold by a receiver to be ap-
pointed by the court, and that out of the pro-
ceeds the judgments and interest might be
paid. On the 13th of February, 1868, and
before the said suit was commenced, the bank-
rupt filed his voluntary petition in bankrupt-
cy. The creditors above named proved their
said debts in the bankruptcy proceedings.
On the 10th of April, 1868, this court made
an order staying all proceedings in the said
action until the question of the discharge of
the petitioner in bankruptcy should be deter-
mined by this court. The creditors now ap-
plied to the court for an order vacating and
setting aside such order of stay.

A. R. Dyett. for the creditors.

Benedict & Boardman, for the bankrupt.

BLATCHFORD, District Judge. The order
of stay was made under that part of section
twenty-one of the bankruptcy act which pro-
vides that "no creditor proving his debt or
claim shall be allowed to maintain any suit
at law or in equity therefor against the bank-
rupt, but shall be deemed to have waived all
right of action and suit against the bankrupt,
and all proceedings already commenced, or

unsatisfied judgments already obtained thereon, shall be deemed to be discharged and surrendered thereby; * * * and any such suit or proceeding shall, upon the application of the bankrupt, be stayed, to await the determination of the court in bankruptcy on the question of the discharge." The action in question, so far as it concerns the bankrupt as a defendant in it, is a suit for the debts set forth in the complaint, a suit to collect such debts, and the creditors, by proving such debts in the bankruptcy, waived all right of action thereon against the bankrupt, and the judgments, so far as they were judgments against the bankrupt, were thereby discharged and surrendered. This view applies, whether the action be regarded as founded on the original indebtedness of on the judgments. The order of stay was, therefore, proper, as respects the bankrupt. It is urged, however, that the suit ought to be allowed to proceed against the wife, as a suit to have the debts paid out of real estate of which the legal title is in the wife, and to enforce a trust created by the statute law of New York, in favor of the creditors, it being provided thereby (1 Rev. St. 728, §§ 51, 52), that "where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance," subject only to the provision, that "every such conveyance shall be presumed fraudulent as against the creditors at the time of the person paying the consideration, and, where a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands." It is claimed, that the real estate in question was, therefore, never the property of the bankrupt, and could not pass to his assignee in bankruptcy; and that it does not pass to such assignee under section fourteen of the act, as being "property conveyed by the bankrupt in fraud of his creditors," because it never was conveyed by the bankrupt. This view overlooks the true character of the suit brought by the creditors in the state court. Their complaint shows that the bankrupt took his own money and made the purchase of the house and lot; that, on such purchase, it was conveyed by the vendors to the bankrupt's wife; that the purchase money so paid by the bankrupt was more than enough to pay the judgments; that the transaction was fraudulent as against the creditors; and that a trust resulted in favor of the creditors, to an extent sufficient to satisfy their demands. This trust they seek to have enforced against the house and lot, as representing the money so fraudulently applied by the bankrupt. The fraud, and the only fraud, committed by the bankrupt was in taking his own money and using it in this way. Therefore, on the case set up by the

creditors in their complaint, the money so used and applied by the bankrupt, as now represented by the house and lot, is "property conveyed by the bankrupt in fraud of his creditors." As such, it passed, by virtue of section fourteen of the act, to his assignee in bankruptcy, and he can sue for and recover such property. Any equitable right which the creditors had to enforce any trust created by the law of New York in their favor, in respect to such money or its representative, and any equitable right conferred on them by the bringing of their suit, is subordinate to the right and title of the assignee in bankruptcy. His title relates back to the 13th of February, 1868. The suit of the creditors was brought afterwards. The equitable right to enforce the statutory trust is not such a lien or pledge as is saved or protected, as against the assignee, by the provisions of the fourteenth or twentieth or any other section of the act. The motion to vacate the order of stay is denied.